**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

|  |  |  |
|---|---|---|
| ADAM J. GUNKEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. CIV-23-497-PRW |
| OU MEDICINE INC., d/b/a OU HEALTH, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER

Before the Court are Defendant's Motion to Dismiss Complaint for Failure to State a Claim and Brief in Support (Dkt. 7); Plaintiff's Response and Brief in Opposition to Defendant's Motion to Dismiss for Failure to State a Claim (Dkt. 8); and Defendant's Reply in Support of Its Motion to Dismiss (Dkt. 10).

### *Facts*

This case arises from a dispute over Defendant OU Health's implementation of the federal COVID-19 vaccine mandate and then-OU Health employee Plaintiff Adam Gunkel's[1] decision to decline the vaccine.

---

[1] Plaintiff is proceeding *pro se*. While *pro se* pleadings are construed liberally, the same rules of procedure govern, and the Court may not allege additional facts or construct new legal arguments on Plaintiff's behalf. *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

In July of 2021 OU Health began requiring its employees to either take the COVID-19 vaccine or risk termination.[2] An employee whose decision to decline the vaccine was either (1) allergic or medical in nature, or (2) philosophical or religious in nature, however, was allowed to keep their job.[3] Plaintiff submitted an exemption form (the "Initial Form"), checking the box for "philosophical or religious beliefs," and continued to work unvaccinated.[4]

In November of 2021, something changed. The federal government, via an Interim Final Rule ("IFR") issued by the Centers for Medicaid and Medicare Services ("CMS"), began forcing all Medicare and Medicaid certified providers and suppliers, including Defendant, to require their employees to take the vaccine.[5]

In response, Defendant launched a revamped vaccine program, including new vaccine exception request forms.[6] The new form (the "Revamped Form") for requesting a religious waiver was more detailed, asking applicants to "describe [their] sincerely held religious beliefs" and how they conflicted with each vaccine, list available accommodations that would eliminate the conflict, and fill out contact information for a "Religious/Spiritual Leader."[7]

---

[2] Pl.'s Compl. (Dkt. 1-1), at 3.

[3] *See* Pl.'s Resp. Ex. 1 (Dkt. 8-1). For reasons discussed below, these documents are properly before the Court on this Motion to Dismiss.

[4] *See* Pl.'s Resp. Ex. 1 (Dkt. 8-1).

[5] Pl.'s Compl. (Dkt. 1-1), at 4; Def.'s Mot. (Dkt. 7), at 2–3.

[6] Pl.'s Compl. (Dkt. 1-1), at 4–5.

[7] Def.'s Mot. Ex. 2 (Dkt. 7-2).

Plaintiff submitted his Revamped Form, stating in Section 2 that he "ha[s] a sincerely held religious belief that conflicts with the vaccine requirement," but that he "do[es] not feel safe discussing said belief."[8] Plaintiff referred back to this statement in answer to the remaining questions on the form.[9]

Defendant then sent Plaintiff an addendum form (the "Addendum Form").[10] The Addendum Form again asked Plaintiff to "describe in detail" why he was seeking a religious accommodation and his specific objections to the vaccination.[11] Plaintiff reiterated his "general concerns"[12] from the Revamped Form, adding that he would not "submit to a 'religious test.'"[13]

Following the January 2022 deadline Defendant had imposed on its employees to either comply with or receive an exemption from the vaccine mandate, Plaintiff was initially suspended, and then terminated.[14]

Plaintiff brought this action in Oklahoma state court, alleging religious discrimination and various torts.[15] Defendant removed the case based on federal question

---

[8] Def.'s Mot. Ex. 2 (Dkt. 7-2).

[9] Def.'s Mot. Ex. 2 (Dkt. 7-2).

[10] Pl.'s Compl. (Dkt. 1-1), at 5.

[11] Def.'s Mot. Ex. 3 (Dkt. 7-3).

[12] Pl.'s Compl. (Dkt. 1-1), at 5.

[13] Def.'s Mot. Ex. 3 (Dkt. 7-3).

[14] Pl.'s Compl. (Dkt. 1-1), at 5.

[15] Pl.'s Compl. (Dkt. 1-1), at 5–10.

jurisdiction[16] and supplementary jurisdiction over the state law claims. Defendant now brings this Motion to Dismiss, which has been fully briefed by the parties.

### Standard of Review

In reviewing a Fed. R. Civ. P. 12(b) motion to dismiss, the Court must satisfy itself that the pleaded facts state a claim that is plausible.[17] All well-pleaded allegations in the complaint must be accepted as true and viewed "in the light most favorable to the plaintiff."[18] While factual allegations are taken as true, a court need not accept mere legal conclusions.[19] "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are not enough.[20]

Both Defendant's Motion (Dkt. 7) and Plaintiff's Response (Dkt. 8) include evidence not part of the Complaint (Dkt. 1). Consideration of materials outside of the pleadings sometimes requires converting a motion to dismiss to a motion for summary judgment.[21] But "a document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute."[22] The evidence—Plaintiff's initial vaccine waiver form,

---

[16] Plaintiff's religious discrimination claim is grounded in Title VII of the Civil Rights Act of 1964, as well as the Oklahoma Anti-Discrimination Act.

[17] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[18] *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996)).

[19] *Khalik v. United Air Lines*, 671 F.3d 1188, 1190–91 (10th Cir. 2012).

[20] *Id.*

[21] Fed. R. Civ. P. 12(d).

[22] *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253–54 (10th Cir. 2005).

Plaintiff's revamped vaccine waiver form, and Plaintiff's addendum form—are all referred to in the Complaint (Dkt. 1-1) and central to at least Plaintiff's religious discrimination claim. Neither party has disputed the authenticity of these documents. Accordingly, the Court considers these documents without converting Defendant's Motion (Dkt. 7) into a motion for summary judgment.

In addition, the parties' briefs reference several government documents, such as the CMS IFR and an Equal Employment Opportunity Commission guidance manual.[23] To the extent they are relevant here, the Court may take judicial notice of those "facts which are a matter of public record" on a 12(b)(6) motion to dismiss.[24]

### *Analysis*

Plaintiff originally advanced five causes of action in his Complaint. His first claim is his only federal law claim, alleging religious discrimination in violation of Title VII of the Civil Rights Act of 1964,[25] as well as the Oklahoma Anti-Discrimination Act.[26] Claims two and four allege common law invasion of privacy torts—intrusion upon seclusion and publication of private facts, respectively. Claims three and five allege *Burk* torts—an Oklahoma state law doctrine that prohibits discharging an employee for "refusing to act in violation of an established and well-defined public policy or for performing an act

---

[23] *See, e.g.*, Def.'s Mot. (Dkt. 7), at 2–4.

[24] *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006); *see also Diné Citizens Against Ruining Our Env't v. Haaland*, 59 F.4th 1016, 1028 n.5 (10th Cir. 2023).

[25] 42 U.S.C. §§ 2000e, 2000e-2.

[26] Okla. Stat. tit. 25, § 1302.

consistent with a clear and compelling public policy."[27] Plaintiff has since abandoned claims three and four.[28]

## I. Title VII Religious Discrimination

Plaintiff alleges that Defendant violated Title VII's prohibition on religious discrimination when it fired him for refusing to take the vaccine. Specifically, Title VII prohibits an employer from "discharg[ing] an individual . . . because of such individual's . . . religion."[29] In addition, Title VII imposes a duty on employers to "reasonably accommodate [] an employee's . . . religious observance or practice" as long as the accommodation does not impose an "undue hardship on the conduct of the employer's business."[30] Plaintiff argues that because he told his employer that he had a religious objection to the vaccine, his employer was obligated by Title VII to accommodate him.

The *McDonnell Douglas* burden-shifting framework[31] is used to determine when a plaintiff's circumstantial evidence is enough to establish a prima facie case of Title VII

---

[27] *Burk v. K-Mart Corp.*, 770 P.2d 24, 28–29 (Okla. 1989).

[28] *See* Pl.'s Notice of Voluntary Dismissal (Dkt. 11). In the Tenth Circuit, Rule 41(a) may not be used to voluntarily dismiss individual claims in a multi-count action, only the action as a whole. Amending a pleading in accordance with Rule 15 is the appropriate vehicle for such a maneuver. *See Gobbo Farms & Orchards v. Poole Chem. Co.*, 81 F.3d 122, 123 (10th Cir. 1996). While some of our sister districts have limited *Gobbo* to its facts, *see Van Leeuwen v. Bank of Am., N.A.*, 304 F.R.D. 691 (D. Utah 2015), Plaintiff's attempted dismissal runs directly afoul of those facts: partial dismissal of some, but not all, claims in an action with a single defendant. Given the Court's proposed resolution of this case, a detailed breakdown of how Plaintiff's state law claims are dismissed is unnecessary.

[29] 42 U.S.C. § 2000e-2(a).

[30] 42 U.S.C. § 2000e(j).

[31] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801–02 (1973).

discrimination.[32] "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in [his] complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim."[33] The exact elements for a prima facie case vary by situation, and courts have employed various formulations through the years.[34]

The prima facie elements of nearly any Title VII discrimination claim can be distilled and stated generally as: (1) membership in a protected class; (2) adverse employment action; and (3) circumstances that give rise to an inference of discrimination.[35] The third element has been described as "[t]he critical prima facie inquiry."[36]

A more specific prima facie case formulation has sometimes been employed in religious accommodation cases. This formulation holds that a prima facie case is established by a showing that "(1) [the employee] had a bona fide religious belief that conflicted with an employment requirement; and (2) [the employee's] need for an

---

[32] *Singh v. Cordle*, 936 F.3d 1022, 1037 (10th Cir. 2019).

[33] *Khalik*, 671 F.3d at 1192.

[34] *See Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005) ("[T]he articulation of a plaintiff's prima facie case may well vary, depending on the context of the claim and the nature of the adverse employment action alleged.").

[35] *Ibrahim v. All. for Sustainable Energy, LLC*, 994 F.3d 1193, 1196 (10th Cir. 2021); *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 799–800 (10th Cir. 2007).

[36] *Singh*, 936 F.3d at 1037 (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1227 (10th Cir. 2000)).

accommodation was a motivating factor in the employer's decision to take an adverse employment action against [him]."[37]

Both Plaintiff and Defendant direct this Court's attention to yet another formulation of elements for a prima facie case of discrimination in the context of religious accommodations, which we will call the Traditional Formulation. It holds that a prima facie case of discrimination is established when the employee shows that: (1) he had a bona fide religious belief that conflicts with an employment requirement; (2) he informed his employer of that belief; and (3) he was fired for failure to comply with the conflicting employment requirement.[38]

No matter the formulation, this case turns on whether Plaintiff's factual allegations establish, or at least approximate, a prima facie case that his sincerely held religious belief motivated his termination. Defendant does not question Plaintiff's general status as a sincere holder of religious beliefs. And Plaintiff undoubtedly suffered an adverse employment action. What is in question is whether Plaintiff has alleged enough to support an inference that the adverse employment action was motivated by an unwillingness to accommodate his religious conflict. While it is no longer clear that the Traditional Formulation's requirement that Plaintiff had informed Defendant of his belief is part of the

---

[37] *EEOC v. JBS USA, LLC*, 481 F. Supp. 3d 1204, 1218 (D. Colo. 2020) (quoting *EEOC v. Jetstream Ground Servs., Inc.*, 134 F. Supp. 3d 1298, 1318 (D. Colo. 2015)); *accord Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1275 (11th Cir. 2021).

[38] *See Thomas v. Nat'l Ass'n of Letter Carriers*, 225 F.3d 1149, 1155 (10th Cir. 2000); *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 65–66 (1986) (laying out the nearly identical formulation used in the Second Circuit at the time).

test,[39] a plaintiff must still plead some facts that allow a court to make reasonable inferences about the defendant's motives.[40]

But the Complaint shows that Plaintiff willingly and explicitly declined to reveal any details about his religious beliefs. Defendant leans heavily on this fact in arguing that it could not have discriminated against Plaintiff on the basis of his religious beliefs because Plaintiff refused to ever tell it what sincerely held religious belief conflicted with taking the vaccine. Because Plaintiff failed to specify the conflict between Defendant's vaccine mandate and his faith, and because Plaintiff failed to identify what accommodation(s) he sought, says Defendant, it lacked the ability to consider, much less discriminate against,

---

[39] In *EEOC v. Abercrombie & Fitch Stores, Inc.*, the Supreme Court took up an appeal from a grant of summary judgment in a religious accommodation case that used the Traditional Formulation. 575 U.S. 768 (2015) *rev'g* 731 F.3d 1106 (10th Cir. 2013). The question presented was whether Title VII protections kicked in "only where an [employee] has informed the employer of his need for an accommodation." 575 U.S. at 770. The Court's answer was no. *Id*. at 774–75. It explained that Title VII prohibits actions taken with a discriminatory motive, which may be inferred even without evidence that an employer had actual knowledge of the employee's conflicting religious practice. In a footnote, the Court conceded that the motive element may bring along some kind of knowledge requirement but declined to address the issue fully. *Id*. at 774 n.3. In his concurrence, Justice Alito reasoned that Title VII's "because of" language did imply some kind of knowledge on the part of the employer because it "would be very strange" to conclude that an employer discriminated "because of" religion if the employer had no inkling that the employee's conflict with a work requirement was religious in nature. *Id.* at 776–78 (Alito, J., concurring). Although *Abercrombie* did not formally abrogate the Traditional Formulation, its logic and holding suggest that element two, an affirmative showing that an employee "informed his employer of [his] belief," is no longer necessary to make a prima facie case. Nevertheless, some portion of the notice reasoning underlying the element lives on in the "inference of discrimination" and "motivating factor" elements of the earlier formulations.

[40] *See, e.g., Friend v. AstraZeneca Pharmaceuticals LP*, No. SAG-22-03308, 2023 WL 3390820 (D. Md. May 11, 2023) (dismissing a religious accommodation claim because the plaintiff failed to inform his employer about his religious beliefs, so it could not be inferred that the employer failed to accommodate those beliefs).

Plaintiff's religious beliefs. Essentially, Defendant argues that Plaintiff was terminated not for his religious beliefs, but for his refusal to engage in its process for adjudicating accommodation requests.

Plaintiff sees things differently. His primary argument, in both his Complaint and his Response to Defendant's Motion, is grounded in estoppel. In Plaintiff's telling, Defendant's acceptance of the Initial Form—in which Plaintiff simply "checked the box" for philosophical or religious objection to the vaccine—demonstrates that Defendant acknowledged Plaintiff's sincerely held religious beliefs and concluded that vaccine exemption was a reasonable accommodation of those beliefs. Plaintiff seemingly concludes that any subsequent alteration of this status quo to require more information is ipso facto discrimination, or at least enough to establish a prima facie case of discrimination. Plaintiff specifically attacks Defendant's revamped vaccine mandate process and form as arbitrary and more intrusive than what is required by the CMS IFR.

Defendant has two responses. First, Defendant notes that the initial vaccine waiver form allowed employees to check a box for "[p]hilosophical or religious beliefs,"[41] thereby committing Defendant to nothing vis-à-vis religious accommodations specifically. Second, Defendant points to the different grounds of authority for the Initial Form and the later forms. While the Initial Form stemmed from OU Health's self-imposed vaccine mandate, the later forms were promulgated in an attempt to satisfy the new federally-imposed vaccine mandate. Defendant argues that this policy difference, rather than discriminatory

---

[41] Pl.'s Resp. Ex. 1 (Dkt. 8-1).

intent, was the basis for its request for more information and its decision to terminate Plaintiff when he refused to provide that information.

The Court finds—and Plaintiff offers—no precedent for Plaintiff's suggestion that employers are forever bound by an accommodation decision, and that any alteration to such terms to reflect changing factual or legal circumstances is automatically suspect. Plaintiff refers the Court to a 2008 EEOC guidance manual, which states that "employers who unreasonably request unnecessary or excessive corroborating evidence risk being held liable for denying a reasonable accommodation request."[42] In addition to not having the force of law, this guidance merely informs employers that there are limits to what they can request, but it does not define those limits. While it may counsel against a repeated string of requests for more information about an employee's beliefs, it says nothing to render improper a one-time change from requiring *no* information to requiring *some* information.

Plaintiff concedes that the CMS IFR was "[t]he only thing that changed between the first exemption being granted and the denial of the second exemption."[43] He also acknowledges that the CMS IFR "states that employers have 'flexibility' regarding 'establish[ing] their own processes and procedures, including forms.'"[44] But Plaintiff disputes the legal import of the CMS IFR, and alleges that the "revised process served no legitimate purpose." This lack of legitimate purpose, says Plaintiff, is what gives rise to an inference of religious discrimination. But Defendant's transition from the Initial Form to

---

[42] U.S. E.E.O.C., Compliance Manual on Religious Discrimination (2021).

[43] Pl.'s Compl. (Dkt. 7-1), at 6.

[44] Pl.'s Compl. (Dkt. 7-1), at 6 (emphasis in original).

the Revamped and Addendum Forms was for the purpose of satisfying the new federal regulation, and no matter what one may think about the legality and wisdom of that regulation (neither of which are at issue here), that purpose is legitimate.

And even accepting that the Revamped Form was more intrusive than necessary to evaluate a request for religious accommodation, the Addendum Form clarifies that Defendant wanted answers to only two questions that go to the core of the conflict: "Why are you seeking the religious accommodation to OU Health's COVD-19 Vaccination program?" and "What is your objection to the COVID-19 vaccination?"[45] These two questions that Defendant ultimately wanted answered both serve the legitimate purpose of allowing Defendant to determine whether Plaintiff's objection to the vaccine was actually based on a religious conflict.[46]

Here, Plaintiff's freestanding assertion on the Revamped Form that "I have a sincerely held religious belief that conflicts with the vaccine requirement" sheds no light on the basis of the alleged conflict. Indeed, it is essentially the sort of "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements," which

---

[45] Def.'s Mot. Ex. 3 (Dkt. 7-3).

[46] For example, in *Thomas v. Review Bd., Ind. Empl. Sec. Div.*, the Supreme Court held that Indiana couldn't deny unemployment benefits to a Jehovah's Witness who quit his job at a factory making tanks for the military because he believed that making weapons for war was a sin. 450 U.S. 707 (1981). While the Court agreed that it had no role in adjudicating the logic or doctrinal correctness of that belief, the Court was able to decide the case because it had two critical pieces of information: (1) the plaintiff's specific religious belief, and (2) the plaintiff's position as to how his employment conflicted with that religious belief.

courts routinely discount when considering a 12(b)(6) motion.[47] Plaintiff's Complaint fails to elaborate further. It states that the vaccine requirement "violated a tenant [sic] of a 'sincerely held religious belief.'"[48] Plaintiff describes his answers on the Revamped Form as "general concerns." And while Plaintiff alleges that Defendant's Revamped and Addendum Forms represented an "attempt[] to weaponize his most intimate beliefs regarding life, purpose, and death against him," he does not allege any facts demonstrating that he ever informed his employer of those beliefs, that they were religious in nature, and how they conflicted with the vaccine mandate.[49] In sum, Plaintiff states legal conclusions coterminous with the first element of the Traditional Formulation, not factual assertions "rais[ing] a right to relief above the speculative level."[50]

   In the end, outside of Plaintiff's estoppel argument, the Complaint is devoid of facts that gesture towards an inference of discrimination. The mere act of inquiring about an employee's religious beliefs to identify conflicts with a work requirement is not itself discriminatory or an invidious "religious test." In many cases it is a necessary part of the religious accommodation process. And while Plaintiff argues that the CMS IFR did not require Defendant to implement the revamped accommodation system, he concedes that Defendant had the flexibility to do so, and that the CMS IFR prompted the change. By his own admission, and as the forms make evident, Plaintiff "refused to engage" in that

---

[47] *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *see also Twombly*, 550 U.S. at 555.

[48] Pl.'s Compl. (Dkt. 7-1), at 3.

[49] Pl.'s Compl. (Dkt. 7-1), at 6.

[50] *Twombly*, 550 U.S. at 555.

process.[51] And when Defendant sent him the much less intrusive Addendum, he refused to answer that as well. Nowhere does Plaintiff allege that Defendant had actual knowledge of the nature of his religious beliefs and need for accommodation. Nor does he allege any pathway by which Defendant could have come to infer or suspect the content of his beliefs and how it conflicted with the vaccine mandate.

Taking Plaintiff's factual allegations about the circumstances as true, all that can be reasonably inferred is that Plaintiff's termination was related to Defendant's religious accommodation process. But that mere relationship does not raise an inference of discrimination on the basis of religious belief. Plaintiff has not alleged facts that connect the dots between his religious beliefs and his termination.[52]

For the above reasons, the Court finds that Plaintiff has failed to plausibly allege his Title VII religious discrimination claim, and therefore that claim must be dismissed. Defendant argues that this claim should be dismissed with prejudice because any amendment would be futile. Consistent with the above discussion, the Court agrees that amendment would be futile given Plaintiff's admitted refusal to inform Defendant of his

---

[51] Pl.'s Compl. (Dkt. 7-1), at 6.

[52] *See Blackwell v. Lehigh Valley Health Network*, No. 22-cv-03360-JMG, 2023 WL 362392, at *7–9 (E.D. Pa. Jan. 23, 2023); *DeVore v. Univ. of Ky. Bd. of Trs.*, No. 22-CV-00186-GFVT-EBA, 2023 WL 6150773, at *3–4 (E.D. Ky. Sept. 20, 2023) (noting that a plaintiff must "show that it was the religious aspect of her conduct that motivated her employer's actions." (quoting *Lawhead v. Brookwood Mgmt. Co., LLC*, No. 22-CV-00886-JRA, 2023 WL 2691718, at *3 (N.D. Ohio Mar. 29, 2023))); *Cagle v. Weill Cornell Med.*, No. 22-CV-6951 (LJL), 2023 WL 4296119, at *4 (S.D.N.Y June 30, 2023) ("Bald allegations that a plaintiff has a religious belief and that those religious beliefs conflict with an employment requirement are insufficient to state a claim for religious discrimination under Title VII.").

religious beliefs and explain how they conflicted with the vaccine requirement. Accordingly, Plaintiff's Title VII claim is **DISMISSED WITH PREJUDICE**.

## II. Remaining State Law Claims

All of Plaintiff's remaining claims sound in Oklahoma law. "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."[53] The Court finds no reason to retain jurisdiction over Plaintiff's state law claims. Accordingly, those claims are **REMANDED** to the District Court of Oklahoma County.

### Conclusion

For the reasons given above, Defendant's Motion (Dkt. 7) is **GRANTED IN PART** and **DENIED IN PART**; Plaintiff's Title VII claim is **DISMISSED WITH PREJUDICE**; and Plaintiff's state law claims are **REMANDED**. The Court Clerk is hereby directed to remand this action to the District Court of Oklahoma County, Oklahoma. Plaintiff's Motion for PACER Privileges (Dkt. 12) is **DENIED AS MOOT**.

**IT IS SO ORDERED** this 26th day of February 2024.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE

[53] *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998); 28 U.S.C. § 1367(c)(3).

15